UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ALLIEANNA CHARLEYN MAHUERON,

Plaintiff,

v.

BRAD CAIN; JAMIE MILLER; J.
WOODLAND; HEIDI STEWARD; DR.
GARTH GULICK; DR. WARREN
ROBERTS; LT. HOLLIE RUSSEL; SGT.
RESHEL BROWN; SGT. ERIC HOOD;
CPT. WILLIAM KING; CPT. CASEY
CLEAVER; SGT. SCOTT GILLUM; CO
WOOD; LT. CASILLOS; LT. PHILLIPS;
SGT. DENITA SHARP; CO LOGAN
SYMONS; and JOHN DOES 1-20,

Defendants.

Case No. 2:22-cv-01549-MC

**OPINION AND ORDER**

- 1 -    **OPINION AND ORDER**

MCSHANE, Chief Judge.

Plaintiff, a self-represented adult in custody (AIC) with the Oregon Department of Corrections (ODOC), filed suit under 42 U.S.C. § 1983 and alleged that Defendants failed to protect her from assault, provided inadequate medical treatment, and denied necessary medical accommodations. Defendants now move for summary judgment. Plaintiff fails to raise a genuine issue of material fact to defeat summary judgment, and Defendants' motion is GRANTED.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that an issue of fact remains to be tried. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 587 (citation and quotation marks omitted).

Because Plaintiff is self-represented, the Court construes her filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Beard*, 789 F.3d 1125, 1133 (9th Cir. 2015).

- 2 -    OPINION AND ORDER

However, Plaintiff is not relieved of the "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. CV 10-5862-GAF (RNB), 2011 WL 13142131 (C.D. Cal. Dec. 5, 2011).

### A. Eighth Amendment Claims

1. Failure to Protect

Plaintiff alleges that Defendants Cain, Miller, Woodland, Steward, Russel, Brown, Hood, King, Cleaver, Gillum, Wood, Casillos, Phillips, Sharp, and Symons (collectively referred to as the Security Defendants), failed to protect her from assault by other AICs and exhibited deliberate indifference to her safety in violation of the Eighth Amendment.

The Eighth Amendment imposes a duty on prison officials to protect AICs from violence or harm at the hands of other AICs. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). A prison official violates this duty when two requirements are met. *Id.* at 834. First, when objectively viewed, the conditions of confinement must pose "a substantial risk of serious harm" to the AIC. *Id.* Second, the official must be subjectively aware of the risk to the AIC and act with "deliberate indifference to inmate health or safety." *Id.* at 834, 839-40 (internal quotation marks omitted). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Id.* at 837; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) ("It is well settled that '[d]eliberate indifference occurs when [an] official acted or failed to act despite his knowledge of a substantial risk of serious harm.'") (citation omitted).

Deliberate indifference is "something more than mere negligence" but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official's deliberate indifference may be established

**- 3 -    OPINION AND ORDER**

through an "inference from circumstantial evidence" or "from the very fact that the risk was obvious." *Id.* at 842.

Plaintiff's Amended Complaint alleges that the Security Defendants failed to protect her from assault on several occasions, beginning in September 2020 while Plaintiff was housed at the Snake River Correctional Institution. *See* (Second) Am. Compl. ¶¶ 39-43 (ECF No. 35). Plaintiff further alleges that she was assaulted on at least three other occasions after this date and the Security Defendants took no action to address the threat or to protect her from harm.

The record reflects that on September 4, 2020, another AIC hit Plaintiff from behind with "closed fist blows," and she responded by punching the other AIC as they struggled with each other. King Decl. Ex. 3 at 39-40 (ECF No. 86). A correctional officer deployed pepper spray before Plaintiff and the AIC were separated and taken to the disciplinary segregation unit (DSU). *Id.* Plaintiff was charged with rule violations of Disobedience of an Order I and Inmate Assault II, and those violations were dismissed upon a finding that the other AIC "unilaterally attacked" Plaintiff. *Id.* Ex. 3 at 37-38.

On March 24, 2021, Plaintiff struck another AIC with closed fists and tried to knee the AIC in the face as he put his hands up in a defensive position. *Id.* Ex. 3 at 33. Plaintiff admitted the assault and stated that she lost her temper because the AIC had been harassing her. *Id.* Ex. 3 at 30. Plaintiff was found guilty of the rule violation of Assault III. *Id.*

On April 11, 2022, another AIC "unexpectedly" struck Plaintiff in the face with a closed fist as they stood in the meal line. King Decl. Ex. 3 at 11. Plaintiff tried to get away, but the other AIC followed and continued to strike Plaintiff, and they exchanged blows. *Id.* Ex. 3 at 11-13. An officer ordered them to stop fighting, and they complied and were taken to special housing. *Id.* Plaintiff was charged with violating the rule of Assault I and the charge was later dismissed. *Id.*

**- 4 -    OPINION AND ORDER**

Afterward, Plaintiff refused to return to her housing unit because she was "threatened and attacked in general population" and wanted to be transferred. *Id.* Ex. 3 at 8.

On March 27, 2024, Plaintiff was transferred to Oregon State Correctional Institution. King Decl. Ex. 1 at 2. On April 15, 2024, Plaintiff approached another AIC and touched him in the mid-section in a "sexually suggestive" manner, and in response, the other AIC struck Plaintiff with a closed fist. *Id.* Ex. 3 at 1-4. Plaintiff was found to have committed the rule violation of Sexual Harassment. *Id.* Ex. 3 at 1-2.

Plaintiff presents no evidence that any of the Security Defendants knew of and disregarded a substantial risk to her safety with respect to these incidents. The record reflects that Plaintiff was the aggressor in two of the four assaults, and no evidence creates an inference that the Security Defendants knew that Plaintiff faced a risk of assault on September 4, 2020 or April 22, 2022 and failed to take appropriate action to prevent the risk. Although Plaintiff reported that she felt unsafe after being assaulted, she did not provide specific information about threats to her safety or identify the AICs who threatened her and posed a potential risk. King Decl. ¶ 12 & Ex. 3 at 8, 14, 36.

Plaintiff suggests that her transgender status should have alerted the Security Defendants that she faced a threat of harm. However, Plaintiff must produce evidence that each of the Security Defendants knew of and deliberately disregarded threats of harm or assault, and she presents no such evidence. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002) ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.").

For these reasons, Plaintiff fails to establish deliberate indifference based on the failure to protect, and summary judgment is granted on this claim.

**- 5 -    OPINION AND ORDER**

2.  Medical Treatment

Plaintiff next alleges that ODOC medical personnel failed to provide adequate medical treatment for her serious heart and back conditions and exhibited deliberate indifference to her health. (Second) Am. Compl. ¶¶ 28-32.

Prison officials and physicians violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an AIC's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To sustain this claim, a plaintiff must establish the existence of "a serious medical need" and show that the defendant's "response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A prison official acts with 'deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where a prisoner alleges a delay in receiving medical treatment, the delay must have led to "significant harm." *Hallett*, 296 F.3d at 746.

When Plaintiff entered ODOC custody 2016, she reported a history of cardiac issues, including a heart rhythm disorder. Hitchcock Decl. ¶ 8(a) (ECF No. 85). From 2016 to 2018, Plaintiff had annual echocardiograms to monitor her heart rhythm and a mitral valve issue. *Id.* In August 2019, Plaintiff was diagnosed with acute onset congestive heart failure and mitral valve regurgitation, and she underwent surgery for a mitral value replacement. *Id.* ¶ 8(b)-(d) & Ex. 21. Plaintiff has had follow-up medical appointments with a cardiology specialist since that procedure. *Id.* ¶ 8(e) & Exs. 21-22.

**- 6 -    OPINION AND ORDER**

Plaintiff has also complained of back issues since 2016. The record reflects degenerative changes to her spine, and Plaintiff has been treated with pain medication, additional imaging, and given a low bunk restriction, a stair restriction, and a back brace. *Id.* ¶¶ 7, 9 & Exs. 2-18, 24. Dr. Roberts and the Therapeutic Level of Care (TLC) Committee have also approved requested care for Plaintiff on numerous occasions, including care for cardiac and urology issues and gender affirming treatment. *Id.* Ex. 1.

On April 22, 2025, Plaintiff had an appointment at the OHSU Knight Cardiovascular Institute to evaluate her heart condition for gender affirming surgery. *Id.* ¶ 8(f) & Ex. 23. Plaintiff reported that she walks up to one mile daily, works in the kitchen, and "always keeps moving." *Id.* Ex. 23 at 1. Plaintiff has experienced "no history of recent cardiac events, no dysrhythmia, no severe valvular heart disease, no current symptoms of unstable angina or decompensated heart failure." *Id.* Ex. 23 at 5.

On this record, Plaintiff fails to show that ODOC medical providers exhibited deliberate indifference to her health and disregarded a known risk of harm. ODOC medical providers have monitored her heart issues since she entered custody, and they referred Plaintiff to outside cardiac specialists for a mitral valve replacement with appropriate follow-up evaluations. *See generally* Hitchcock Decl. & Exs. Plaintiff has also received x-rays, medication, and appropriate accommodations for her degenerative back condition. *Id.* More recently, Plaintiff complained of no untreated health issues and reported an active lifestyle despite her incarceration. *Id.* Ex. 24.

Accordingly, no genuine issue of material fact precludes summary judgment on Plaintiff's Eighth Amendment claim based on medical care.

### B.  ADA and RA Claims

Finally, Plaintiff asserts claims of disability discrimination based on the denial of a wedge therapy pillow and other unspecified accommodations. (Second) Am. Compl. ¶¶ 24-27.

- 7 -    OPINION AND ORDER

In April 2021, Plaintiff purchased a wedge pillow from the ADA office after obtaining medical authorization. Main Decl. ¶¶ 4-6 & Ex. 1 (ECF No. 87). Medical orders for ADA accommodations typically expire after one year, and Plaintiff's authorization for the pillow expired. Hitchcock Decl. ¶ 9; Saldivar Decl. ¶ 6 (ECF No. 88). In 2023 and 2024, Plaintiff renewed her requests for a wedge pillow, and the requests were not approved because Plaintiff did not have medical authorization. *Id.*

The ADA and RA prohibit public entities, including state prisons, from discriminating against a qualified individual with a disability. 42 U.S.C. § 12132; 29 U.S.C.A. § 794(a); *see also Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998) (finding that "State prisons fall squarely within the [ADA] definition of 'public entity'"). To state a claim under the ADA and RA, Plaintiff must establish that: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of ODOC's services, programs, or activities; (3) she was excluded from participating in or denied the benefits of ODOC's services, programs, or activities, or she was otherwise discriminated against; and (4) such exclusion, denial of benefits, or discrimination was because of her disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *see also Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").

Plaintiff presents no evidence that she was denied a wedge pillow—or any other ODOC service, program, or activity—because of her disabilities. Instead, Plaintiff's request for a wedge pillow was denied due to the lack of medical authorization. To the extent Plaintiff's claims arise from the alleged denial of medical care, she cannot sustain an ADA or RA claim on inadequate medical treatment. *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The

- 8 -     OPINION AND ORDER

ADA prohibits discrimination because of disability, not inadequate treatment for disability."),

*overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en

banc).

## CONCLUSION

Defendants' Motions for Summary Judgment (ECF Nos. 84, 90) are GRANTED and this

action is DISMISSED with prejudice. Any appeal of this Order or the Judgment dismissing this

action would be frivolous or not taken in good faith, and Plaintiff's IFP status is HEREBY

REVOKED.

IT IS SO ORDERED.

DATED this 13th day of March, 2026.


s/ Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge


- 9 -    **OPINION AND ORDER**